IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHAD ERIC JOHNSON | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | )   CIVIL NO. 10-891-GPM |
| RALPH JOHNNIE and DIANA JANSEN, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**MURPHY, District Judge:**

This matter comes before the Court on Defendants, Dr. Ralph Johnnie and Diana Jansen's, motion for summary judgment. Plaintiff Chad Eric Johnson filed this pro se lawsuit pursuant to 42 U.S.C. § 1983 claiming Defendants were deliberately indifferent to his serious medical need in violation of his Eighth Amendment Rights. Plaintiff claims while he was incarcerated at the Centralia Correctional Center from September 2007 to March 2010, Defendants ignored his repeated requests for dental care and delayed his access to such care.

Defendants Dr. Ralph Johnnie and Diana Jansen filed their motion for summary judgment on June 1, 2012 (Doc. 53). The motion is supported by a memorandum and exhibits (Doc. 54). Dr. Johnnie asserts that he was not deliberately indifferent to Plaintiff's serious dental needs because he examined Plaintiff on numerous occasions to assess Plaintiff's dental needs and then appropriately treated those needs (Docs. 53, 54). Ms. Jansen asserts that she was not deliberately indifferent to Plaintiff's serious dental needs because she had no personal involvement in the alleged delay or denial of dental care to Plaintiff (Docs. 53, 54). Plaintiff filed a timely response

brief to the motion for summary judgment, as well as supporting exhibits (Doc. 68). Defendants then filed a reply brief (Doc. 71). The Court has considered the briefs, along with all other related materials submitted by the parties. For the following reasons, summary judgment as to Defendants Ralph Johnnie and Diana Jansen is GRANTED.

## I. FACTS

Plaintiff was incarcerated at Centralia Correctional Center ("Centralia") from September 2007 until March 2010 (Doc. 68). During that time, Defendant Dr. Ralph Johnnie was the dentist at Centralia, and Defendant Diana Jansen was Dr. Johnnie's dental assistant (Docs. 53-1, 53-2).

Upon Plaintiff's arrival at Centralia in September 2007, Dr. Johnnie reviewed Plaintiff's dental records (Doc. 68). On May 1, 2008, after Plaintiff returned to Centralia from a writ of habeas corpus, Dr. Johnnie reviewed Plaintiff's dental records again (Doc. 53-1). On May 29, 2008, Plaintiff had his first visit with Dr. Johnnie (Doc. 68). During the exam, Dr. Johnnie determined that Plaintiff's number 19 tooth needed to be extracted and teeth number 7 and 8 needed cavity fillings (Doc. 68). Dr. Johnnie concluded that Plaintiff's condition was not an emergency and did not require immediate medical intervention, so Plaintiff was added to the waiting lists for both procedures (Doc. 68). On April 19, 2009, Dr. Johnnie extracted Plaintiff's number 19 tooth without incident (Doc. 68). On June 2, 2009, Dr. Johnnie filled both of Plaintiff's cavities without incident (Doc. 68).

In September 2009, Dr. Johnnie saw Plaintiff for his routine biannual exam (Doc. 68). During the examination, Dr. Johnnie determined that Plaintiff needed his number 4 tooth pulled (Doc. 68). Again, Dr. Johnnie determined that Plaintiff's condition was not an emergency and

did not require immediate medical intervention, so Plaintiff was added to the waiting list (Doc. 68). On February 3, 2010, Dr. Johnnie extracted Plaintiff's number 4 tooth (Doc. 68).

Five days later, Dr. Johnnie examined Plaintiff at Plaintiff's request (Doc. 68). During this examination, Dr. Johnnie discovered Plaintiff had a post-operative infection (Doc. 68). In response, Dr. Johnnie prescribed Plaintiff Ibuprofen for the pain and penicillin for the infection; Dr. Johnnie also recommended Plaintiff use salt water rinses three times a day (Doc. 68). Dr. Johnnie scheduled a follow-up appointment with Plaintiff on February 23, 2010 (Doc. 68). On February 23, 2010 at the follow-up visit, Dr. Johnnie noted that the extraction sight had not fully healed, and he prescribed Plaintiff additional antibiotics and scheduled another follow-up appointment on March 1, 2010 (Doc. 68). On March 1, 2010 at the follow-up visit, Dr. Johnnie cleaned out the tooth socket, prescribed Plaintiff Ibuprofen for the pain, recommended that Plaintiff finish the antibiotic, and scheduled another follow-up appointment (Doc. 68). Before that follow-up visit occurred, Plaintiff was transferred from Centralia and Dr. Johnnie did not have any further interaction with Plaintiff (Doc. 68).

## DISCUSSION

**A.**     **Legal Standard for Summary Judgment**

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the Court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial.… A mere scintilla of evidence

> in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

### B.    Legal Standard for a Claim of Deliberate Indifference to a Serious Medical Need

In *Estelle v. Gamble,* the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, imposes a duty upon states to provide adequate medical care to incarcerated individuals. 429 U.S. 97, 103 (1976). To establish an Eighth Amendment claim of inadequate medical care in a prison, the plaintiff must show that a responsible state official was deliberately indifferent to his or her serious medical condition. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "This standard erects two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). First, the plaintiff must demonstrate that his medical condition is "objectively, sufficiently serious." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005), *citing Farmer*, 511 U.S. at 834 (internal quotations omitted). A serious medical condition is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards v. Snyder*, 478 F.3d 827, 830–31 (7th Cir. 2007). Second, the plaintiff must demonstrate that a state official acted with a sufficiently culpable state of mind—deliberate indifference. *Greeno*, 414 F.3d at 653. A doctor acts with

deliberate indifference when the doctor's choice of treatment is "so far afield of accepted professional standards as to raise the inference that it was not actually based on medical judgment." *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008), *citing Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir.2006).

Here, the parties do not contest the first prong of the deliberate indifference analysis—a serious medical condition (*See* Docs. 53, 68, 71). Therefore, the issue presented by the summary judgment motion is whether the Defendants were deliberately indifferent to Plaintiff's serious dental need.

**C.      Dr. Ralph Johnnie**

Plaintiff claims Dr. Johnnie was deliberately indifferent to his serious medical needs because Dr. Johnnie ignored Plaintiff's repeated requests for dental care, and delayed Plaintiff's treatment when Plaintiff should have gotten immediate dental care (Doc. 68). According to Plaintiff, he sent numerous requests for dental care for his number 19 tooth and his number 4 tooth while he was incarcerated at Centralia, but Dr. Johnnie ignored those requests (Doc. 68). Plaintiff also claims Defendant repeatedly refused to extract his number 19 tooth and his number 4 tooth (Doc. 68). According to Plaintiff, at his appointment on May 29, 2008, he needed an emergency extraction of number 19 tooth, but instead he was put on the wait list and not given any pain medication (Doc. 68). Plaintiff also claims he requested that Dr. Johnnie extract tooth number 4 at his appointment on April 6, 2009 when he had tooth number 19 tooth extracted, and at his appointment on June 2, 2009 when he had two cavities filled; however, Plaintiff alleges Dr. Johnnie ignored those requests and he was put on the wait list instead (Doc. 68).

In considering the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to establish that Dr. Johnnie acted with deliberate indifference to Plaintiff's dental condition and pain. Plaintiff's claim that Dr. Johnnie ignored Plaintiff's numerous medical requests is without merit because there is no evidence that Dr. Johnnie ever received those requests.[1] Moreover, by Plaintiff's own count, he was seen by Dr. Johnnie eight times in two and a half years (*See* Doc. 68). This includes two visits for examinations, two visits for teeth extractions, one visit for cavity fillings, and three post-operative follow-up visits (Doc. 68).

Plaintiff cannot dispute that he received a substantial amount of dental care while he was incarcerated at Centralia, so his complaint is essentially that he did not get the treatment that he wanted at the time he wanted it. Under the Eighth Amendment, however, an inmate is not entitled to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). An inmate is also not entitled to the best care possible. *Id.* Rather, an inmate is entitled to reasonable measures to meet a substantial risk of serious harm to him or her. *Id.* Dr. Johnnie took those measures.

Centralia's dental policy provides that inmates who needed non-emergency tooth extractions and cavity fillings were placed on the appropriate waiting list (Doc. 53-1). Dr. Johnnie had the authority to identify inmates with dental emergencies (*See* Doc. 53-1). Upon reviewing Plaintiff's dental records and examining Plaintiff during his first five visits, Dr. Johnnie determined that Plaintiff's condition was not acute and that no emergency treatment was required. Dr. Johnnie followed the prison's procedures and put Plaintiff on the waiting list to have his teeth extracted and his cavities filled. When it was Plaintiff's turn, those services were provided. Pain medication was prescribed to Plaintiff when the tooth extractions were performed and when he

---

[1] Dr. Johnnie's affidavit provides that he reviewed over 1,600 dental requests from inmates at Centralia that he received from September 2007 through February 2010 (Doc. 71-1). The only request from Plaintiff was dated February 23, 2010 (Doc. 71-1). On that day, Dr. Johnnie saw Plaintiff at his cell (Docs. 68, 71-1).

complained of having pain. In contrast, when Dr. Johnnie determined that Plaintiff's condition was acute after the second tooth extraction, Dr. Johnnie saw Plaintiff almost immediately, prescribed antibiotics, performed follow-up care, and scheduled Plaintiff for repeated follow-up appointments.

"What we have here is not deliberate indifference to a serious medical need, but a deliberate decision by a doctor to treat a medical need in a particular manner." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). Plaintiff's assertion that his condition necessitated different treatment boils down to an unsubstantiated disagreement with Dr. Johnnie's professional judgment. It is well-established that an inmate's mere disagreement with the course of his medical treatment does not constitute an Eighth Amendment claim of deliberate indifference. *Id.* Plaintiff's assertion that his condition necessitated more prompt treatment also does not constitute deliberate indifference. As the Seventh Circuit explained, "anyone who has ever visited a doctor's office knows that some delays in treatment are inevitable, particularly absent a life threatening emergency. Such delays are even more likely in the prison environment." *Berry v. Peterman*, 604 F.3d 435, 442 (7th Cir. 2010). Because Dr. Johnnie determined Plaintiff's condition was not acute, Plaintiff had no serious medical need so the waiting time does not constitute deliberate indifference.

The affidavit submitted by Plaintiff does not create a triable issue of fact as to whether Dr. Johnnie was deliberately indifferent to any serious dental need of Plaintiff. Dr. Johnnie repeatedly provided dental care to Plaintiff based on his professional judgment and his assessment of Plaintiff's dental needs. Therefore, summary judgment in favor of Defendant Ralph Johnnie is granted.

**D.      Diana Jansen**

Plaintiff claims Diana Jansen was deliberately indifferent to his serious medical needs for the same reasons as Dr. Johnnie— she ignored Plaintiff's repeated requests to have his number 19 tooth and number 4 tooth extracted, and she delayed Plaintiff's treatment when he should have gotten immediate dental care (Docs. 8, 68).  However, by Plaintiff's own admission, as a dental assistant Ms. Jansen did not have the authority to diagnose Plaintiff or classify Plaintiff's case as an emergency (Doc. 68).  Ms. Jansen also did not have the authority to schedule Plaintiff's dental appointments, change his existing appointments, or assign priority to Plaintiff's dental requests (Doc. 68).  She could not prescribe Plaintiff medication, or perform the tooth extractions or cavity fillings that he needed (Doc. 68).  Nevertheless, Plaintiff maintains that Ms. Jansen "could have made her opinion known to Dr. Johnnie" (Doc. 68).  Plaintiff's assertion is simply not enough to show there is a triable issue of fact that Ms. Jansen was deliberately indifferent to Plaintiff's dental need because there is no evidence that Ms. Jansen delayed or denied treatment to Plaintiff.  "The limited scope of her authority negates any inference of her culpability." *Maddox v. Jones*, 370 F. App'x 716, 721 (7th Cir. 2010).  Therefore, summary judgment in favor of Defendant Diana Jansen is granted.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants Ralph Johnnie and Diana Jansen (Doc. 53) is **GRANTED**.  Defendants Ralph Johnnie and Diana Jansen are **DISMISSED** from this action with prejudice.

**IT IS SO ORDERED.**

DATED:   March 27, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge